UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

| James Matthew Franklin and | Case No. 24-21173-gmh |
| Christina Lynn Davis | Chapter 7 |

Debtors.

**NOTICE OF MOTION FOR RELIEF FROM STAY AND ABANDONMENT OF LEASE**

PLEASE TAKE NOTICE that the Creditor, Aries Property Management, LLC ("Aries"), by its attorneys, Krekeler Law, S.C., by Attorney Carrie S. Werle, has filed a Motion for Relief from Stay and Abandonment of Lease (the "Motion"), a copy of which is attached hereto.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in the bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the relief sought in the Motion, or if you want the Court to consider your views on the matter, then no later than **14 days from the date of this Notice**, you or your attorney must:

1. File with the Court a written objection at:

   Clerk of the U. S. Bankruptcy Court
   Room 126, Federal Courthouse
   517 E. Wisconsin Avenue
   Milwaukee, WI 53202

If you mail your objection to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

2. You must also mail a copy to:

| Office of the U.S. Trustee | Attorney Carrie S. Werle |
| --- | --- |
| 517 E. Wisconsin Ave., Rm 430 | Krekeler Law, S.C. |
| Milwaukee, WI 53202 | 26 Schroeder Court, Suite 300 |
| | Madison, WI 53711 |

Any objection should state briefly the grounds for such objection and request a hearing date. Unless a written request for hearing is filed with the Court and copies mailed as instructed above, on or before the date indicated above, an order will be entered granting the relief requested in the Motion.

Dated this April 22, 2024.

KREKELER LAW, S.C.

By: /s/ *Carrie S. Werle*
Carrie S. Werle
Attorney for Aries Property Management, LLC
26 Schroeder Court, Suite 300
Madison, WI 53711
Tel: (608) 258-8555; Fax: (608) 258-8299
cwerle@ks-lawfirm.com

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

James Matthew Franklin and
Christina Lynn Davis

Case No. 24-21173-gmh
Chapter 7

Debtors.

**MOTION FOR RELIEF FROM STAY AND ABANDONMENT OF LEASE**

NOW COMES the Creditor, Aries Property Management, LLC ("Aries"), by its attorneys, Krekeler Law, S.C., by Attorney Carrie S. Werle, and respectfully requests that the Court lift the automatic stay against James Franklin and Christina Davis ( a/k/a Franklin) (hereinafter, "Debtors") with respect to 1301 Mayer Street, Menasha, WI 54952 pursuant to § 362(d) of the United States Bankruptcy Code (the "Code") and approve the abandonment of the residential lease pursuant to § 554(b) of the Code. In support of these requests, the Creditor states as follows:

**Jurisdiction and Background**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334(a), and the order of reference in this district entered pursuant to § 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The basis for the relief sought herein is 11 U.S.C. § 362 and 554 and Fed. R. Bankr. P. 4001, 6007(b), and 9014.

3. On March 12, 2024, Debtors filed their petition for relief in this Court, pursuant to the above-captioned case.

4. The Debtors executed a Residential Rental Agreement (the "Lease") with Aries Property Management, LLC ("Aries") on October 28, 2023. A copy of the Lease is attached hereto as **Exhibit A** and incorporated herein.

5. Debtors are carrying a balance of unpaid rent due from January 2024 through April 2024, for a total of $15,600.00.

6. Debtors did not exercise any option to purchase under the Lease.

7. The Lease is in default; the current outstanding balance totals approximately $15,600.00, with late fees and additional charges continuing to accrue.

8. The Debtors have failed to comply with the terms and conditions of the Lease by failing to submit rental payments pursuant to the provisions of the Lease.

9. A Small Claims Eviction action was commenced on February 19, 2024. The eviction return date was scheduled for March 13, 2024, at 10:15 am.

10. Debtors appeared at the eviction return date and contested the eviction. A court trial was subsequently scheduled for March 20, 2024, at 1:30 pm.

11. At the contested eviction hearing counsel for Aries received notice of the bankruptcy filing for Debtors and requested that the eviction be stayed to seek relief from stay. The eviction has been stayed until April 30, 2024.

12. The facts outlined above constitute "cause" for this Court to lift the automatic stay with respect to the residential lease and abandon the lease from the bankruptcy estate.

13. In order to properly mitigate its damages and reduce its potential claim against the estate, Aries needs to be able to find new potential lessees for the property, which cannot be done during Debtors' occupancy. Expedient relief accomplishes this.

## Request for Relief

WHEREFORE, the Creditor, Aries Property Management, LLC, respectfully requests the Court to order:

1. That the automatic stay is terminated with respect to the Debtors' interest in 1301 Mayer Street, Menasha, WI 54952 so that Aries may pursue an eviction of the Debtors and find new tenants to mitigate its damages,

2. That the Property is abandoned from the Debtors' estate;

3. That the 14-day stay of order found in Bankruptcy Rule 4001 shall not be implemented in this case; and

4. For any other relief the Court deems just and appropriate.

Dated April 22, 2024.

                                    KREKELER LAW, S.C.

                        By:       /s/    *Carrie S. Werle*
                              Carrie S. Werle
                              Attorneys for Aries Property Management, LLC
                              26 Schroeder Court, Suite 300
                              Madison, WI 53711
                              Tel: (608) 258-8555; Fax: (608) 258-8299
                              cwerle@ks-lawfirm.com

# Aries Property Management, LLC

## Real Estate Lease Agreement
**1301 Mayer Street, Menasha**

THIS LEASE AGREEMENT (hereinafter referred to as the "Agreement") is made and entered into this day of OCTOBER 28, 2023, by and between Aries Property Management, LLC (hereinafter referred to as "Lessor") and James Franklin, Christina Franklin, Cassandra Mahaffie, and Christian Davis (hereinafter referred to as "Lessee").

WHEREAS Lessor is the landlord of certain real property being, lying and situated in Winnebago County, Wisconsin such real property having a street address of 1301 Mayer Street, Menasha Wisconsin.

WHEREAS Lessor is desirous of leasing the Premises to Lessee upon the terms and conditions as contained herein; and

WHEREAS Lessee is desirous of leasing the Premises from Lessor on the terms and conditions as contained herein.

NOW, THEREFORE, the covenants and obligations contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto hereby agree as follows:

1. TERM. Lessor leases to Lessee and Lessee leases from Lessor the above-described premises together with any and all appurtenances thereto, for an initial term beginning on November 11, 2023, and ending at 12 o'clock midnight on December 31, 2024. Lessee will have the option to renew lease for up to two (2) additional one-year terms provided there are no lease violation in the current term.

2. RENT. The rent for the term hereof is the sum of $3900 (Three Thousand Nine Hundred dollars) payable every month beginning December 1, 2023.

    2.1 Lessee will pay $2600 (Two Thousand Six Hundred dollars) as prorated rent for the period of November 11 through November 30.

    2.2 Lessee shall make rent payments monthly

    2.3 All such payments shall be DIRECT DEPOSITED to Lessor in the account provided or paid directly to Lessor by check or other approved means.

3. DEPOSIT. Lessee shall pay Lessor a deposit of $25,000 (Twenty Five Thousand dollars) as follows: One half of the deposit $12,500 (Twelve Thousand Five

EXHIBIT A

Hundred dollars) will be due on November 21, 2023. The remaining half of the deposit $12,500 (Twelve Thousand Five Hundred dollars) will be due on December 1, 2023. This deposit is nonrefundable and will be deducted from the purchase price of the home as listed in "Option to Purchase" if Lessee executes the Option to Purchase within specified guidelines. Each additional lease renewal term will require an additional $25,000 (Twenty Five Thousand dollars) deposit to be paid by time of renewal which is also non-refundable and will also be deducted from the purchase price of the home as listed in "Option to Purchase" if Lessee executes the Option to Purchase within specified guidelines.

4. MAJOR DAMAGES. In the event that the Premises shall, in the absence of negligence by Lessee, be damaged by fire, flood, storm, civil commotion, or other unavoidable cause so as to render the Premises uninhabitable, this Lease shall terminate as of the date of such damages. In the event of such termination, Deposits as well as Rent which will be refunded on a prorated basis from the date of the incident.

5. INSURANCE.

   The Lessor is responsible for paying and maintaining the following Rental Property taxes and insurances
   - _X_ Real Estate Taxes and Assessments
   - _X_ Casualty Insurance
   - _X_ Fire Coverage Insurance
   - _X_ Flood Insurance

6. DELINQUENT AND/OR RETURNED CHECKS. Lessor's ability to provide services rests upon the prompt receipt of rental payment. Lessor's failure to receive Lessee's rent within 3 days of the due date will result in a late fee of $10.00 per day for each late payment will be assessed until payment is made. If a check has been returned by the financial institution, all future payments will be required in cash or by certified check. In addition, Lessee shall pay a $20.00 returned check fee. All fees, late fees, and service charges incurred by the Lessee as well as any expenses including reasonable attorney's fees incurred by Lessor in instituting and prosecuting any actions by reason of any default of Lessee hereunder shall be deemed to be additional rent and shall be due from Lessee to Lessor immediately following the incurring of the respective expenses, the nonpayment of which shall be a breach of this agreement for nonpayment of rent.

7. USE OF PREMISES. The Premises shall be used and occupied by Lessee and Lessee's immediate family exclusively, and no part of the Premises shall be used at any time during the term of this Agreement by Lessee for the purpose of carrying on any business, profession, or trade of any kind, or for any purpose other than as a private dwelling. Lessee shall not allow any other person, other than Lessee's immediate family or transient relatives and friends who are guests of Lessee, to use or occupy the Premises without first obtaining Lessor's written consent to such use.

Lessee shall comply with any and all laws, ordinances, rules and orders of any and all governmental or quasi-governmental authorities affecting the cleanliness, use, occupancy and preservation of the Premises.

8. CONDITION OF PREMISES. Lessee stipulates, represents, and warrants that Lessee has examined the Premises, and that they are at the time of this Lease in good order, repair, and in a safe, clean and leasable condition.

9. KEYS. The Lessee shall be issued 2 keys to the property by the Lessor at the signing of this Agreement. In the event the Lessee loses the keys that were issued at the signing of this agreement and the Lessee request more keys from the Lessor. The Lessee will be required to pay in advance $20 per key requested.

There will be a $20 charge for the second and each subsequent time Lessor is called to let any of Lessees into the Premises, whatever the reason. The charge to unlock your door is $20 After Hours.

10. HOUSEHOLD MEMBERS AND GUESTS. Any additions to the household members named on the lease, including Live-in Aides and foster children, but excluding natural births, require the advance written approval of the Lessor. Such approval will be granted only if the new family members pass the Lessor's screening criteria, and a unit of the appropriate size is available. Permission to add Live-in Aides and foster children shall not be unreasonably refused. Lessee agree not to have the same overnight guest that has not passed the Lessor's screening criteria for more than 3 consecutive nights, and no more than a total of 36 nights per year.

11. ASSIGNMENT AND SUB-LETTING. Lessee shall not assign this Agreement or sub-let or grant any license to use the Premises or any part thereof without the prior written consent of Lessor. A consent by Lessor to one such assignment, sub-letting or license shall not be deemed to be a consent to any subsequent assignment, sub-letting or license. An assignment, sub-letting, or license without the prior written consent of Lessor or an assignment or sub-letting by operation of law shall be absolutely null and void and shall, at Lessor's option, terminate this Agreement.

12. ALTERATIONS AND IMPROVEMENTS. Lessee shall make no alterations to the buildings or improvements on the Premises or construct any building or make any other improvements on the Premises without the prior written consent of Lessor. Any and all alterations, changes, and/or improvements built, constructed or placed on the Premises by Lessee shall, unless otherwise provided by written agreement between Lessor and Lessee, be and become the property of Lessor and remain on the Premises at the expiration or earlier termination of this Agreement.

13. NON-DELIVERY OF POSSESSION. In the event Lessor cannot deliver possession of the Premises to Lessee upon the commencement of the Lease term, through no fault of Lessor or its agents, then Lessor or its agents shall have no liability, but the rental herein provided shall abate until possession is given. Lessor or its agents shall have

sixty (60) days in which to give possession, and if possession is tendered within such time, Lessee agrees to accept the demised Premises and pay the rental herein provided from that date. In the event possession cannot be delivered within such time, through no fault of Lessor or its agents, then this Agreement and all rights hereunder shall terminate, and security damage deposit and administrative fee shall be refunded in full.

14. HAZARDOUS MATERIALS. Lessee shall not keep on the Premises any item of a dangerous, flammable, or explosive character that might unreasonably increase the danger of fire or explosion on the Premises or that might be considered hazardous or extra hazardous by any responsible insurance company.

15. LEAD-BASED PAINT DISCLOSURE. Housing built before 1978 may contain lead-based paint. Lead paint, paint chips and dust can cause health hazards of not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre-1978 housing, Lessors must disclose the presence of lead-based paint hazards in the dwelling. Renters must also receive a federally approved pamphlet on lead poisoning prevention.

This property was built before 1978, and a lead paint inspection was conducted on the property. The results of the lead paint inspection are no lead based paint present. There are no reports or records concerning lead based paint on this property

16. UTILITIES. Lessee shall be responsible for arranging and paying for all utility services required on the Premises.

17. VEHICLES/PARKING. NO parking or driving on the property lawn or neighbor's lawns or driveway is permitted. Any cars found parked on the lawn will be towed at Lessee's expense. Cars must be parked in an orderly fashion. The Lessor, at the Lessees expense, may remove disabled vehicles and unregistered vehicles at any time. NO vehicle maintenance may be performed on the property (i.e., oil changes, brake changes, etc.). Town parking restrictions must be followed.

18. MAINTENANCE AND REPAIR RULES.
Lessee will, at its sole expense, keep and maintain the Premises and appurtenances in good and sanitary condition and repair during the term of this Agreement and any renewal thereof. Without limiting the generality of the foregoing, Lessee shall:
(a) Not obstruct the driveways, sidewalks, courts, entry ways, stairs and/or halls, which shall be used for the purposes of ingress and egress only.
(b) Keep all windows, glass, window coverings, doors, locks and hardware in good, clean order and repair.
(c) Not obstruct or cover the windows or doors.
(d) Not leave windows or doors in an open position during any inclement weather

(e) Not hang any laundry, clothing, sheets, etc. from any window, rail, porch, or balcony nor air or dry any of same within any yard area or space.

(f) Not cause or permit any locks or hooks to be placed upon any door or window without the prior written consent of Lessor.

(g) Keep all air conditioning filters clean and free from dirt.

(h) Keep all lavatories, sinks, toilets, and all other water and plumbing apparatus in good order and repair and shall use same only for the purposes for which they were constructed. Lessee shall not allow any sweepings, rubbish, sand, rags, ashes or other substances to be thrown or deposited therein. Any damage to any such apparatus and the cost of clearing stopped plumbing resulting from misuse shall be borne by Lessee.

(i) And Lessee's family and guests shall at all times maintain order in the Premises and at all places on the Premises and shall not make or permit any loud or improper noises, or otherwise disturb other residents.

(j) Keep all radios, television sets, stereos, etc., turned down to a level of sound that does not annoy or interfere with other residents.

(k) Deposit all trash, garbage, rubbish or refuse in the locations provided therefor and shall not allow any trash, garbage, rubbish or refuse to be deposited or permitted to stand on the exterior of any building or within the common elements.

(l) Abide by and be bound by any and all rules and regulations affecting the Premises or the common area appurtenant thereto which may be adopted or promulgated by the Condominium or Homeowners' Association having control over them.

(m) Keep lawn mowed and trimmed and snow removed

Lessor will complete repairs necessary to maintain the property in working order. These include repairs necessary for proper heating and cooling of the home as well as provisions for water and electricity. The Lessor is NOT obligated for repairs to appliances.

19. DAMAGE TO PREMISES. In the event the Premises are destroyed or rendered wholly unleaseable by fire, storm, earthquake, or other casualty not caused by the negligence of Lessee, this Agreement shall terminate from such time except for the purpose of enforcing rights that may have then accrued hereunder. The rental provided for herein shall then be accounted for by and between Lessor and Lessee up to the time of such injury or destruction of the Premises, Lessee paying rentals up to such date and Lessor refunding rentals collected beyond such date. Should a portion of the Premises thereby be rendered unleaseable, the Lessor shall have the option of either repairing such injured or damaged portion or terminating this Lease. In the event that Lessor exercises its right to repair such unleaseable portion, the rental shall abate in the proportion that the injured parts bears to the whole Premises, and such part so injured shall be restored by Lessor as speedily as practicable, after which the full rent shall recommence, and the Agreement continue according to its terms.

20. **INSPECTION OF PREMISES.** Lessor and Lessor's agents shall have the right at all reasonable times during the term of this Agreement and any renewal thereof to enter the Premises for the purpose of inspecting the Premises and all buildings and improvements thereon. And for the purposes of making any repairs, additions or alterations as may be deemed appropriate by Lessor for the preservation of the Premises or the building. Lessor and its agents shall further have the right to exhibit the Premises and to display the usual "for sale", "for rent" or "vacancy" signs on the Premises at any time within forty-five (45) days before the expiration of this Lease. The right of entry shall likewise exist for the purpose of removing placards, signs, fixtures, alterations or additions, but do not conform to this Agreement or to any restrictions, rules or regulations affecting the Premises.

21. **SUBORDINATION OF LEASE.** This Agreement and Lessee's interest hereunder are and shall be subordinate, junior and inferior to any and all mortgages, liens or encumbrances now or hereafter placed on the Premises by Lessor, all advances made under any such mortgages, liens or encumbrances (including, but not limited to, future advances), the interest payable on such mortgages, liens or encumbrances and any and all renewals, extensions or modifications of such mortgages, liens or encumbrances.

22. **TERMINATION OF LEASE.**

    22.1 **TERMINATION BY LESSEE**
    The lease terminates with 60 days written notice by the Lessee. All deposits are forfeited if lease is terminated by lessee

    22.2 **TERMINATION OF TENANCY BY LESSOR**
    (a) Serious or repeated violations of the terms and conditions of the lease.
    (b) Violation of Federal, State, or local law that imposes obligations on the Lessee in connection with the occupancy or use of the contract unit and the premises.
    (c) Criminal activity (as provided below).
    (d) Non-payment of rent or repeated failure to pay rent in a timely manner.
    (e) Any misrepresentation or false statement of information on Lessee's application regardless of whether intentional or negligent.
    (f) Interfering with the management of the property.
    (g) Causing an undue financial burden on the property; or
    (h) Other good cause (as provided below).

    22.3 **OTHER GOOD CAUSE FOR TERMINATION OF TENANCY.**
    (a) During the first year of the initial lease term or anytime during the tenancy, other good cause for termination of tenancy must be something the family did or failed to do.
    (b) During the initial term of the lease or during any extension term, other good cause includes, but is not limited to:

(1) Disturbance of neighbors,
(2) Destruction of property,
(3) Failure to maintain utilities or wasting utilities provided by the Lessor,
(4) Allowing persons not named on the lease to reside in the unit without Lessor's prior written consent, or
(5) Living or housekeeping habits that cause damage or present safety concerns to the Lessee, other residents or to the unit or premises or that may otherwise result in minimum housing violations.
(6) An incident or incidents of actual or threatened domestic violence, dating violence, sexual assault or stalking will not be construed as serious or repeated violations of the lease by the victim or threatened victim of that violence and will not be good cause for terminating a lease held by the victim of such violence.
(7) Compliance with "Schedule A" to the Real Estate Lease Agreement

23. CRIMINAL ACTIVITY. Any of the following types of criminal activity by the Lessee, any member of the household, a guest or another person under the Lessee's control shall be cause for termination of tenancy.

(a) Any activity including criminal activity that threatens the health, safety or right to peaceful enjoyment of the premises by other residents (including conduct/actions against the Lessor and/or property management staff and/or any agents of Lessor).
(b) Any activity including criminal activity that threatens the health, safety or right to peaceful enjoyment of their residences by persons residing in the immediate vicinity of the premises.
(c) Any violent criminal activity on or off the premises.
(d) Any drug-related criminal activity on or off the premises.
(e) Any other activity which impairs the physical or social environment of the premises.
(f) Illegal use or possession of a controlled substance; or
(g) Abuse of alcohol that threatens the health, safety or right to peaceful enjoyment of the premises by other residents.
(h) Interference with management of property.
(i) Criminal activity directly relating to domestic violence, dating violence, sexual assault or stalking engaged in by a member of a Lessee's household or any guest or other person under the Lessee's control shall not be cause for eviction for the Lessee or immediate family member of the Lessee's household who is a victim of domestic violence, dating violence, sexual assault or stalking and as a result Lessee victim could not control or prevent the criminal activity. This exception for victims of domestic violence does not apply to the eviction of a family member who is the

perpetrator of the domestic violence or if there is an actual or imminent threat to other residents, the larger community, Lessor/Lessor's agents or persons providing service to the property if the Lessee is not evicted.

The Lessor may terminate the tenancy for criminal activity in accordance with this section if the Lessor determines that the household member/guest has committed the criminal activity, regardless of whether the household member/guest has been arrested or convicted for such activity. In addition, the Lessor may terminate the tenancy if any member of the household is:

(a) Fleeing to avoid prosecution, or custody or confinement after conviction, for a crime, or attempt to commit a crime, which is a felony under the laws of the place from which the individual flees; or
(b) Violating a condition of probation or parole under Federal or State law.
(c) After the initial term, the Lessor may terminate the lease for no cause.

24. EVICTON BY COURT ACTION.
   The Lessor may only evict the Lessee from the contract unit by instituting a court action.

25. LESSOR TERMINATION NOTICE.
   25.1. Notice of grounds.
      The Lessor must give the Lessee a notice that specifies the grounds for termination of tenancy. The notice of grounds must be given at or before commencement of the eviction action. The notice of grounds may be included in, or may be combined with, any Lessor eviction notice to the Lessee. Lessor eviction notice means a notice to vacate, or a complaint used under State or local law to commence an eviction action.

26. SURRENDER OF PREMISES. Upon the expiration of the term hereof, Lessee shall surrender the Premises in as good a state and condition as they were at the commencement of this Agreement, reasonable use and wear and tear thereof and damages by the elements excepted.

27. ANIMALS. Animals are not allowed per the terms of this lease.
   2 dogs allowed sf

28. QUIET ENJOYMENT. Lessee, upon payment of all of the sums referred to herein as being payable by Lessee and Lessee's performance of all Lessee's agreements contained herein and Lessee's observance of all rules and regulations, shall and may peacefully and quietly have, hold and enjoy said Premises for the term hereof.

29. INDEMNIFICATION. Lessor shall not be liable for any damage or injury of or to the Lessee, Lessee's family, guests, invitees, agents or employees or to any person entering the Premises or the building of which the Premises are a part or to goods or equipment, or in the structure or equipment of the structure of which the

Premises are a part, and Lessee hereby agrees to indemnify, defend and hold Lessor harmless from any and all claims or assertions of every kind and nature.

30. DEFAULT. If Lessee fails to comply with any of the material provisions of this Agreement, other than the covenant to pay rent, or of any present rules and regulations or any that may be hereafter prescribed by Lessor, or materially fails to comply with any duties imposed on Lessee by statute, within seven (7) days after delivery of written notice by Lessor specifying the non-compliance and indicating the intention of Lessor to terminate the Lease by reason thereof, Lessor may terminate this Agreement.

    If Lessee fails to pay rent when due and the default continues for seven (7) days thereafter, Lessor may, at Lessor's option, declare the entire balance of rent payable hereunder to be immediately due and payable and may exercise any and all rights and remedies available to Lessor at law or in equity or may immediately terminate this Agreement.

31. LATE CHARGE. In the event that any payment required to be paid by Lessee hereunder is not made within three (3) days of when due, Lessee shall pay to Lessor, in addition to such payment or other charges due hereunder, a "late fee" in the amount of $10 Per Day Late

32. ABANDONMENT. If at any time during the term of this Agreement Lessee abandons the Premises or any part thereof, Lessor may, at Lessor's option, obtain possession of the Premises in the manner provided by law, and without becoming liable to Lessee for damages or for any payment of any kind whatever. Lessor may, at Lessor's discretion, as agent for Lessee, relet the Premises, or any part thereof, for the whole or any part thereof, for the whole or any part of the then unexpired term, and may receive and collect all rent payable by virtue of such reletting, and, at Lessor's option, hold Lessee liable for any difference between the rent that would have been payable under this Agreement during the balance of the unexpired term, if this Agreement had continued in force, and the net rent for such period realized by Lessor by means of such reletting. If Lessor's right of reentry is exercised following abandonment of the Premises by Lessee, then Lessor shall consider any personal property belonging to Lessee and left on the Premises to also have been abandoned, in which case Lessor may dispose of all such personal property in any manner Lessor shall deem proper and Lessor is hereby relieved of all liability for doing so.

33. ATTORNEYS' FEES. Should it become necessary for Lessor to employ an attorney to enforce any of the conditions or covenants hereof, including the collection of rentals or gaining possession of the Premises, Lessee agrees to pay all expenses so incurred, including a reasonable attorneys' fee.

34. **RECORDING OF AGREEMENT.** Lessee shall not record this Agreement on the Public Records of any public office. In the event that Lessee shall record this Agreement, this Agreement shall, at Lessor's option, terminate immediately and Lessor shall be entitled to all rights and remedies that it has at law or in equity.

35. **GOVERNING LAW.** This Agreement shall be governed, construed and interpreted by, through and under the Laws of the State of Wisconsin.

36. **SEVERABILITY.** If any provision of this Agreement or the application thereof shall, for any reason and to any extent, be invalid or unenforceable, neither the remainder of this Agreement nor the application of the provision to other persons, entities or circumstances shall be affected thereby, but instead shall be enforced to the maximum extent permitted by law.

37. **BINDING EFFECT.** The covenants, obligations and conditions herein contained shall be binding on and inure to the benefit of the heirs, legal representatives, and assigns of the parties hereto.

38. **DESCRIPTIVE HEADINGS.** The descriptive headings used herein are for convenience of reference only and they are not intended to have any effect whatsoever in determining the rights or obligations of the Lessor or Lessee.

39. **CONSTRUCTION.** The pronouns used herein shall include, where appropriate, either gender or both, singular and plural.

40. **NON-WAIVER.** No indulgence, waiver, election or non-election by Lessor under this Agreement shall affect Lessee's duties and liabilities hereunder.

41. **MODIFICATION.** The parties hereby agree that this document contains the entire agreement between the parties and this Agreement shall not be modified, changed, altered, or amended in any way except through a written amendment signed by all of the parties hereto.

IN WITNESS WHEREOF, the parties have caused these presents to be duly executed:

"Lessee"

**James Franklin**

_____ (Sign)

Date: 10/28/23

"Lessee"

**Cassandra McDuffie**

_____ (Sign)

Date: 10/28/23

"Lessee"

**Christina Franklin**

_____ (Sign)

Date: 10/28/23

"Lessee"

**Christian Davis**

_____ (Sign)

Date: 10/28/23

"Lessor"

**Aries Property Management, LLC**

**Shawn Fliehman (Owner)**

_____ (Sign)

Date: 10/28/23